UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

KENNETH ANTWAN ARTIS,

               Plaintiff,

v.

KENT COUNTY SHERIFF'S OFFICE
et al.,

               Defendants.
_____/

Case No. 1:25-cv-1369

Honorable Ray Kent

**OPINION**

This is a civil rights action brought by a former county detainee under 42 U.S.C. § 1983.[1]

In a separate order, the Court granted Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28

U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed

in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1,

PageID.5.)

This case is presently before the Court for preliminary review pursuant to 28

U.S.C. § 1915(e)(2). The Court is required to conduct this initial review prior to the service of the

complaint. *See McGore v. Wrigglesworth*, 114 F.3d 601, 608–09 (6th Cir. 1997). Service of the

complaint on the named defendants is of particular significance in defining a putative defendant's

relationship to the proceedings.

---

[1] It appears that Plaintiff was not detained when he initiated this action. (*See* Mot. Leave Proceed
*In Forma Pauperis*, ECF No. 2, PageID.10 (indicating that Plaintiff was "hom[e]less" when he
initiated the action).)

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, 28 U.S.C. § 1915(e)(2), by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *McGore v. Wrigglesworth*, 114 F.3d at 608–09.

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under 28 U.S.C. § 1915(e)(2), in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does

2

not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[2]

Under § 1915(e)(2), the Court is required to dismiss any action in which the plaintiff is proceeding *in forma pauperis* if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915(e)(2). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

**I.      Factual Allegations**

Plaintiff was formerly incarcerated at Kent County Correctional Facility (KCCF) in Kent County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the Kent County Sheriff's Office, KCCF, and SMART Communications.

Plaintiff's complaint alleges that on June 23, 2025, he was "placed in the Disciplinary Restrictive Unit (DRU) for a period of 20 consecutive days."[3] (Compl., ECF No. 1, PageID.2.) While in the DRU, Plaintiff was "denied access to a digital tablet, and was therefore unable to

---

[2] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

[3] In this opinion, the Court corrects the punctuation in quotations from Plaintiff's filings.

agree to [Defendant] SMART Communications' mandatory terms for digital mail access." (*Id*.) Plaintiff claims that "[a]s a result, all incoming mail addressed to Plaintiff was returned to sender due to his inability to sign the digital agreement." (*Id*.) On July 13, 2025, Plaintiff "received a tablet and signed the digital mail agreement under coercive circumstances." (*Id*.) Plaintiff alleges that on July 18, 2025, he "was again placed in DRU, this time for 14 consecutive days, again without access to mail." (*Id*.) Plaintiff alleges that he was held in DRU "for a total of 34 days over the course of 40 calendar days." (*Id*., PageID.3.) Further, Plaintiff claims he "notified facility staff of the policy violations, but was informed that 20-day DRU placements were permissible." (*Id*.)

Plaintiff claims that, "[a]ccording to the KCCF Inmate Handbook (Revised June 6, 2025), page 17, punitive segregation in the DRU is limited to 10 days for Category 2 violations." (*Id*., PageID.2.) Plaintiff further claims that "[s]anctions for Category 2 violations include only 'cell restriction' and do not authorize placement in the DRU." (*Id*.) Plaintiff states that "[u]nder Michigan Compiled Law[] § 801.25, solitary confinement of county jail inmates is limited to 10 days per infraction." (*Id*.) Plaintiff further cites Michigan Department of Corrections (MDOC) Policy Directive 03.03.105E as "enforc[ing] a 10-day cap on punitive segregation." (*Id*., PageID.3.)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his First and Fourteenth Amendment rights relating to his mail access and the imposition of disciplinary segregation. (*Id*.) Plaintiff further avers that his placement into segregation for more than 10 days violated Michigan Compiled Law (MCL) § 801.25, MDOC Policy, and KCCF policy. (*Id*.) In his complaint, Plaintiff seeks declaratory and injunctive relief, as well as monetary damages. (*Id*., PageID.3–4.) Plaintiff also filed a motion for preliminary injunction seeking declaratory, injunctive, and monetary relief. (ECF No. 3).

4

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

> **A.    Claims Against Defendants Kent County Sheriff's Office and KCCF**

Plaintiff sues the Kent County Sheriff's Office and KCCF. (Compl., ECF No. 1, PageID.2.) The sheriff's department does not exist as a separate legal entity; it is simply an agent of the county. *Vine v. Cnty. of Ingham*, 884 F. Supp. 1153, 1158 (W.D. Mich. 1995) (citing *Hughson v. Cnty. of Antrim*, 707 F. Supp. 304, 306 (W.D. Mich. 1988) and *Bayer v. Almstadt*, 185 N.W.2d 40, 41 (Mich. Ct. App. 1970)). Further, KCCF is not a separate entity capable of being sued. *See, e.g.*, *Ryan v. Corizon Health Care*, No. 1:13-cv-525, 2013 WL 5786934 (W.D. Mich. Oct. 28, 2013) (discussing that "individual prisons named as Defendants . . . are buildings used . . . to house prisoners," and "[t]hey are not the proper public entity for suit").

However, construing Plaintiff's *pro se* complaint with all required liberality, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court assumes that Plaintiff intended to sue Kent County. Kent County may not be held vicariously liable for the actions of its employees under § 1983. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Instead, a county is liable only when its official policy or custom causes the injury. *Connick*, 563 U.S. at 60.

"Under 42 U.S.C. § 1983, while a municipality can be held liable for a constitutional violation, there is no vicarious liability based on the acts of its employees alone." *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) (citing *Monell*, 436 U.S. at 690–91). Instead, a municipality "can be sued under § 1983 only when a policy or custom of that government caused the injury in question." *Id.* (citations omitted). "[T]he finding of a policy or custom is the initial determination to be made in any municipal liability claim." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). Further, the policy or custom must be the moving force behind the constitutional injury,

and a plaintiff must identify the policy, connect the policy to the governmental entity, and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005) (citing *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003)); *Claiborne Cnty.*, 103 F.3d at 508–09.

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff's department. *See Monell*, 436 U.S. at 690. Moreover, the Sixth Circuit has explained that a custom "for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law." *Claiborne Cnty.*, 103 F.3d at 507. "In short, a 'custom' is a 'legal institution' not memorialized by written law." *Id.*

In his complaint, Plaintiff alleges that he "notified facility staff of the policy violations [regarding the 10-day cap on punitive segregation] but was informed that 20-day DRU placements were permissible." (Compl., ECF No. 1, PageID.3.) To the extent that Plaintiff intended to allege that non-party facility staff have a "practice" of violating a particular policy or law, such as the duration of time that an inmate may be placed in the DRU, Plaintiff has failed to allege sufficient facts to show that any potential wrongdoing by non-parties amounts to Kent County having a practice "so permanent and well settled as to constitute a custom or usage with the force of law." *Claiborne Cnty.*, 103 F.3d at 507. A court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally. *See Los Angeles v. Lyons*, 461 U.S. 95, 102–103 (1983). The Court, therefore, concludes that Plaintiff's allegations against Kent County are subject to dismissal on this basis alone for failure to state a claim.

B.       **Claims Against Defendant SMART Communications**

1.       **Suit Against a Private Entity that Contracts with the State**

Plaintiff's claims against SMART Communications constitute a suit against a private entity. A private entity that contracts with a governmental entity to perform a traditional governmental function like providing healthcare or mail to inmates can "be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West*, 487 U.S. at 54). The requirements for a valid § 1983 claim against a municipality apply equally to private corporations that are deemed state actors for purposes of § 1983. *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell*, 436 U.S. 658, has been extended to private corporations); *Street*, 102 F.3d at 817–18 (same); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990) (same); *Cox v. Jackson*, 579 F. Supp. 2d 831, 851–52 (E.D. Mich. 2008) (same).

Again, "while a municipality can be held liable for a constitutional violation, there is no vicarious liability based on the acts of its employees alone." *Lipman*, 974 F.3d at 747 (citing *Monell*, 436 U.S. at 690–91). "[T]he finding of a policy or custom is the initial determination to be made in any municipal liability claim." *Claiborne Cnty.*, 103 F.3d at 509.

Here, Plaintiff alleges that the "mail policy administered by [Defendant] SMART Communications was imposed . . . and enforced through coercion while Plaintiff was in segregation." (Compl., ECF No. 1, PageID.3.) Plaintiff claims that being unable to agree to the mail policy terms resulted in "all incoming mail addressed to Plaintiff [to be] returned to sender" for a period of 20 days. (*Id*., PageID.2.) Notably, Plaintiff's allegations fail to allege what the complained-of policy states. (*See id*.) Even assuming that the "policy" requires detainees to agree to receive digitized mail through a tablet, which was inaccessible to Plaintiff for 20 days, and that Defendant SMART Communications' policy was the moving force behind Plaintiff's alleged

8

constitutional injury, *see Claiborne Cnty.*, 103 F.3d at 508–09, for the reasons discussed below, Plaintiff fails to state a claim with regards to his First Amendment mail interference claims.

### 2.    First Amendment Mail Interference Claims

Plaintiff alleges that when he was placed into the DRU on June 23, 2025, he was "denied access to a digital tablet, and was therefore unable to agree to [Defendant] SMART Communications' mandatory terms for digital mail access." (Compl., ECF No. 1, PageID.2.) "As a result, all incoming mail addressed to Plaintiff was returned to sender due to his inability to sign the digital agreement." (*Id.*) When Plaintiff was released from the DRU on July 13, 2025, he "received a tablet and signed the digital mail agreement under coercive circumstances." (*Id.*) There are no allegations regarding Plaintiff's mail after July 13, 2025. (*See id.*)

"[A] prison inmate [or county detainee] retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Plaintiff's free speech rights are "uncontrovertedly limited by virtue of [Plaintiff's] incarceration." *Thaddeus-X v. Blatter*, 175 F.3d 378, 392 (6th Cir. 1999). While prisoners have a First Amendment right to communicate with the outside world, *see Valdez v. Rosenbaum*, 302 F.3d 1039 (9th Cir. 2002); *Benzel v. Grammar*, 869 F.2d 1105, 1108 (8th Cir. 1989), they do not have a constitutional right to a particular form of communication, such as access to email. *See, e.g.*, *Bristow v. Amber*, No. 2:12–cv–412, 2012 WL 1963577, *2–3 (S.D. Ohio May 31, 2012) (discussing that prisoners do not have a First Amendment right to access email); *Grayson v. Federal Bureau of Prisons*, 2012 WL 380426, *3 (N.D.W.Va. Feb. 6, 2012) ("[P]risoners have no First Amendment constitutional right to access email."); *Rueb v. Zavaras*, 2011 WL 839320, *6 (D. Colo. Mar.7, 2011) (holding that inmates do not have a First Amendment right to have access to email). Nonetheless, "the First Amendment protects 'the right to receive information and ideas,' which, as applicable in the prison context,

9

extends to the right to receive mail and access reading material." *Bethel v. Jenkins*, 988 F.3d 931, 938 (6th Cir. 2021) (quoting *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972)).

Therefore, to determine whether a prison official's actions in restricting incoming mail are reasonably related to a legitimate penological interest, the Court must assess an official's actions by reference to the following factors: (1) whether there exists a valid, rational connection between the prison regulation and the legitimate governmental interest; (2) whether there remain alternative means of exercising the right; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests. *Turner v. Safley,* 482 U.S. 78, 89–90 (1987).

Here, Plaintiff fails to provide sufficient facts to show that the *Turner* factors above bend in his favor. Plaintiff complains about a 20-day period in which he was unable to receive an unspecified amount of incoming mail. (Compl., ECF No. 1, PageID.2.) Generally, "isolated instances of interference with prisoners' mail" do not rise to the level of a constitutional violation under the First Amendment. *See Johnson v. Wilkinson,* No. 98-3866, 2000 WL 1175519 (6th Cir. Aug. 11, 2000) (citing *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997)) (holding that an "isolated incident, without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation."); *Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010) (citing *Johnson* for the holding that "isolated incidents" of interference with prisoners' rights do not rise to the level of a First Amendment violation); *Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003) ("Okoro was only able to provide one specific incident where he allegedly did not receive the full contents of a letter from his wife. Such a random and isolated incident is insufficient to establish a constitutional

10

violation."). Plaintiff's inability to receive incoming mail in one particular 20-day period, for an unspecified amount of incoming mail, appears to have been an isolated occurrence and was remedied upon his release from the DRU. (Compl., ECF No. 1, PageID.2.) Further, Plaintiff does not provide any details regarding the mail policy, only that he had to sign an agreement for digital mail access. (*See id*.) Because Plaintiff does not provide any details regarding the mail policy, Plaintiff necessarily fails to show that the mail policy restrictions, which required Plaintiff's approval for digital access, lacked a rational connection with legitimate governmental interests. Although Plaintiff claims in a conclusory manner that he signed the digital mail agreement "under coercive circumstances," and that there was a delay in him receiving a tablet, he provides no facts to show how he was coerced and whether his right to send mail, receive mail in another manner, or otherwise exercise his rights was impacted by Defendants' rules or regulations. (*See id*.) Thus, Plaintiff's allegations are insufficient to state a First Amendment mail interference claim.[4] *See Turner,* 482 U.S. at 89-90.

### C.    Fourteenth Amendment Conditions of Confinement Claims

Plaintiff alleges that he was held in the DRU "for a total of 34 days over the course of 40 calendar days." (*Id*., PageID.3.) The Court generously construes this allegation as raising a Fourteenth Amendment due process claim regarding the conditions of Plaintiff's confinement in the DRU.

---

[4] Plaintiff alleges that his incoming mail was "returned to sender" during his 20 days in the DRU, (Compl., ECF No. 1, PageID.2), and that he was "denied any meaningful process, including a hearing, appeal, or administrative review, before the imposition of restrictions on his mail access." (*Id*., PageID.3.) Plaintiff would be entitled to notice of the returned mail under *Procunier v. Martinez*, 416 U.S. 396, 417–419 (1974), but he does not allege that he was not provided with such notice. Plaintiff's complaint contains no allegations or facts that tend to show his due process rights were implicated with regards to the returned mail.

Pretrial detainees like Plaintiff are protected under the Due Process Clause of the Fourteenth Amendment. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018). Until recently, the Sixth Circuit "analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.'" *Greene v. Crawford Cnty.*, 22 F.4th 593, 605 (6th Cir. 2022) (quoting *Brawner v. Scott Cnty.*, 14 F.4th 585, 591 (6th Cir. 2021)). However, in 2015, the Supreme Court differentiated the standard for excessive force claims brought by pretrial detainees under the Fourteenth Amendment's Due Process Clause from those brought by convicted prisoners under the Eighth Amendment. *See Kingsley v. Hendrickson*, 576 U.S. 389 (2015). *Kingsley* left unanswered the question of "whether an objective standard applies in other Fourteenth Amendment pretrial-detainment contexts." *Brawner*, 14 F.4th at 592.

Subsequently, in *Brawner*, the Sixth Circuit modified the second prong of the deliberate indifference test applied to pretrial detainees to require only recklessness. *Id.* at 592, 596. At issue in *Brawner* was a pretrial detainee's claim for deliberate indifference to medical needs. The Sixth Circuit held that to demonstrate deliberate indifference, "[a] pretrial detainee must prove 'more than negligence but less than subjective intent—something akin to reckless disregard.'" *Id.* at 596 (quoting *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)). He or she must prove that the defendant acted "deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* (citation and quotation marks omitted).

*Brawner*, however, "left the [objective] prong untouched." *Hyman v. Lewis*, 27 F.4th 1233, 1237 (6th Cir. 2022). Under that prong, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth [or Fourteenth] Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam). As a

consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillan*, 503 U.S. 1, 9 (1992). Thus, federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable.

With respect to the objective prong, Plaintiff simply alleges the fact that he was in segregation. (Compl., ECF No. 1, PageID.2.) Plaintiff does not allege or show that he was denied basic human needs. And, Plaintiff has not alleged that his confinement in segregation was more severe than the typical conditions of segregation. *See e.g. Wallace v. Baldwin*, 895 F.3d 481, 485 (7th Cir. 2018). Therefore, Plaintiff fails to allege sufficient facts to show the objective prong was satisfied. *Hudson*, 503 U.S. at 9.

Furthermore, even setting that issue aside, Plaintiff has not established the subjective prong of his claim. There are no factual allegations attributed to particular defendants, *see Twombly*, 550 U.S. at 555–61, let alone that the named Defendants acted "deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Brawner*, 14 F.4th at 596 (citation and quotation marks omitted). Therefore, based on the facts alleged in Plaintiff's complaint, Plaintiff fails to show that his detention in segregation violated his constitutional rights. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008).

Accordingly, for the reasons set forth above, Plaintiff's Fourteenth Amendment conditions of confinement claims will be dismissed.

**D.      Section 1983 Claims Regarding the Violation of KCCF and MDOC Policies**

The core of Plaintiff's legal arguments center on the KCCF Inmate Handbook limiting "punitive segregation in the DRU . . . to 10 days for Category 2 violations." (Compl., ECF No. 1, PageID.2.) Plaintiff further claims that KCCF "[s]anctions for Category 2 violations include only 'cell restriction' and do not authorize placement in the DRU." (*Id.*) Plaintiff further cites Michigan

13

Department of Corrections (MDOC) Policy Directive 03.03.105E as "enforc[ing] a 10-day cap on punitive segregation." (*Id*., PageID.3.) The Court construes these allegations to raise claims under § 1983 regarding the violation of KCCF and MDOC policies.

As an initial matter, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Therefore, Plaintiff's assertions that Defendants violated KCCF and MDOC policies fail to state a claim under § 1983.

Additionally, "[w]ithout a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 580 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001).

Here, Plaintiff's allegations that Defendants violated KCCF and MDOC policies fail to raise a cognizable federal claim. Accordingly, Plaintiff's § 1983 claims regarding alleged violations of policy will be dismissed for failure to state a claim.

### E.    State Law Claims

Plaintiff alleges that Defendants violated MCL § 801.25 by placing him in punitive segregation in excess of 10 days. (Compl., ECF No. 1, PageID.3.) In determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182

14

(6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)).

With regards to Plaintiff's state law claims, because Plaintiff's federal claims against all the Defendants will be dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

**III.     Motion for Preliminary Injunction**

In addition to the request for injunctive relief in the complaint, Plaintiff filed a motion for preliminary injunction in this matter. (ECF No. 3.) Preliminary injunctions are "one of the most drastic tools in the arsenal of judicial remedies." *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). Plaintiff's request for relief is particularly broad.

The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Nader*, 230 F.3d at 834. These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also S. Galzer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) ("[T]hese are factors to be balanced, not prerequisites to be met."); *Nat'l Viatical, Inc. v. Universal Settlements Int'l, Inc.*, 716 F.3d 952, 956 (6th Cir. 2013) (same); *Ne. Ohio Coal.*, 467 F.3d at 1009 (same); *Nader*, 230 F.3d at 834 (same). "But even the strongest showing on the other

15

three factors cannot 'eliminate the irreparable harm requirement.'" *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326–27 (6th Cir. 2019) (quoting *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)).

Moreover, where a prison inmate seeks an order enjoining prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 286 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 & n.3 (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978). Preliminary injunctions are not favored, and a movant is not necessarily entitled to such relief, even if the movant has shown likelihood of success on the merits. *Benisek v. Lamone*, 585 U.S. 155, 158 (2018).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his § 1983 action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Plaintiff has not made such a showing. As set forth above, Plaintiff's claims are dismissed for failure to state a cognizable claim.

Moreover, the presence of irreparable harm is not evident. A plaintiff's harm from the denial of a preliminary injunction is irreparable only if it is not fully compensable by monetary damages. *See Overstreet*, 305 F.3d at 578; *see also D.T.*, 942 F.3d at 326 (holding that, absent a showing of irreparable harm, a preliminary injunction is not appropriate, regardless of the strength of the other factors). Here, Plaintiff has been released from custody and therefore has not set forth

16

specific facts showing immediate, concrete, non-compensable irreparable harm to himself in the absence of an injunction.

Finally, the interests of identifiable third parties and the public at large weigh against an injunction. Decisions concerning prison security are vested in prison officials, in the absence of a constitutional violation. Any interference by the federal courts in the administration of jail facilities is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover*, 855 F.2d at 286–87. That showing has not been made here. Accordingly, Plaintiff's request for preliminary injunctive relief will be denied.

### Conclusion

As set forth above, Plaintiff's motion for a preliminary injunction (ECF No. 3) will be denied. Further, having conducted the review required by 28 U.S.C. § 1915(e)(2), the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim. The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

An order and judgment consistent with this opinion will be entered.


Dated:    July 16, 2026                          /s/ Ray Kent
                                                 Ray Kent
                                                 United States Magistrate Judge


17